**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SIERRA CLUB, NATIONAL PARKS** ) | |
| **CONSERVATION ASSOCIATION,** ) | |
| **GROUP AGAINST SMOG AND** ) | |
| **POLLUTION, and** ) | |
| **CHESAPEAKE BAY FOUNDATION,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 08-293** |
| ) | |
| **WELLINGTON DEVELOPMENT-** ) | |
| **WVDT, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

COHILL, D.J.

This action, which is brought under the Clean Air Act ("CAA"), 42 U.S.C. §§ 7604(a)(1) and (a)(3), involves a permit to construct a coal-fired power plant in Nemacolin, Greene County, Pennsylvania. Defendant is Wellington Development-WVDT, LLC ("Wellington"). Plaintiffs are Sierra Club, National Parks Conservation Association ("NPCA"), Group Against Smog and Pollution ("GASP"), and Chesapeake Bay Foundation ("CBF").

Before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (Doc. 10), with exhibits and accompanying brief. In the alternative, Defendant asserts that dismissal is proper under the *Burford* and *Rooker-Feldman* abstention doctrines. Plaintiffs have filed a brief in opposition and accompanying exhibits (Doc. 18), to which Defendant has replied (Doc. 27). Defendants have also filed a supplemental exhibit and accompanying brief (Doc. 30), and Plaintiffs have filed a surreply (Doc. 32).

For the reasons set forth below, we will grant Defendant's motion and dismiss the complaint for lack of subject matter jurisdiction.

1

## Motion to Dismiss Standard

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court takes all allegations in the complaint as true where the motion attacks the complaint as deficient on its face. *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). However, where, as here, the motion attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations. In such cases, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims" and the Court may weigh the evidence to determine that it has subject matter jurisdiction in fact. *Id.* at 891; *Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). When considering a factual attack on jurisdiction, "[a]ny evidence may be reviewed and any factual disputes resolved concerning the allegations giving rise to jurisdiction as it is for the Court to resolve all factual disputes involving the existence of jurisdiction." *Tolan v. United States*, 176 FRD 507 (E.D.Pa. 1998), (citing *Sitkoff v. BMW of North America, Inc.*, 846 F.Supp. 380, 383 (E.D.Pa. 1994)).

When a defendant moves to dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1), it is plaintiff's burden to persuade the court that it has jurisdiction. *Gould Electronics Inc. v. United States*, 220 F.3d 169,178 (3d Cir. 2000) (citing *Kerr Packages, inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1997)).

District courts "enjoy substantial procedural flexibility in handling Rule 12(b)(1) motions." *Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200 (3d Cir. 1990). "A court can evaluate its jurisdiction without an evidentiary hearing 'so long as the court has afforded [the parties] notice and a fair opportunity to be heard.'" *Id.* (citing *Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323-1324 (3d Cir. 1972)).

## Background

Plaintiffs' claims are brought under the citizen suit provision of the federal CAA. 42 U.S.C. § 7604.

2

**CAA Statutory Scheme**

The CAA is designed to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Under this regulatory scheme, the federal Environmental Protection Agency ("EPA") prescribes national air quality standards, and each state is required to adopt a state implementation plan ("SIP"). 42 U.S.C. §§ 7409(a)(b), 7410(a). A SIP provides for emission limitations and other measures designed to achieve and maintain national air standards, including a permit program. 42 U.S.C. 7410(a).

The CAA includes requirements for the prevention of significant deterioration in attainment areas, where air quality is attaining national ambient air quality standards (the "PSD" program). 42 U.S.C. §§ 7470-7492. The PSD program prohibits construction of a "major emitting facility" in an attainment area unless the facility has a PSD permit. 42 U.S.C. § 7475(a). EPA has designated Greene County as an attainment area for sulfur dioxide and nitrogen dioxide. 40 C.F.R. § 81.339.

Under federal PSD regulations, no "new major stationary source" can "begin actual construction" without a PSD permit. 40 C.F.R. § 52.21 (a)(2)(iii). The power plant at issue here is a major stationary source under the CAA.

Under PSD regulations, "[a]ny owner or operator who constructs or operates a source or modification not in accordance with the application submitted pursuant to this section or with the terms of any approval to construct . . . shall be subject to appropriate enforcement action." 42 C.F.R. § 52.21(f)(1). The regulations further provide that "[a]pproval to construct shall become invalid if construction is not commenced within 18 months after receipt of such approval, if construction is discontinued for a period of 18 months or more, or if the construction is not completed within a reasonable time." *Id.*, § 52.21(r)(2).

The Pennsylvania Code contains the same requirement, and specifies that if there is more than an 18-month lapse a new plan approval must be submitted. 25 Pa. Code § 127.13(b).

This deadline ensures that new plants comply with the Best Available Control Technology

3

("BACT"), and are constructed using current information on air pollution levels.

Areas where the air quality does not meet national standards are known as "nonattainment areas." The EPA has designated Greene County as a nonattainment area for ozone. 40 C.F.R. ¶ 81.339). New major stationary sources in nonattainment areas must comply with the New Source Review ("NSR") program in Part D of the CAA. 42 U.S.C. §§ 7501-7515. NSR permits are required for such sources. 42 U.S.C. § 7502(c)(5), 7503.

The EPA approved Pennsylvania's regulations which implement the NSR program. These regulations prohibit "construction or modification of an air contamination facility in a nonattainment area or having an impact on a nonattainment area" unless the facility meets the NSR program requirements. 25 Pa.Code § 127.201(a).

Section 7604 (a) of the CAA authorizes a citizen suit to enforce the statute as follows:

> (1) against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,
> * * *
> (3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit . . . or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

42 U.S.C. § 7604 (a) (1), (3).

The CAA provides that district courts have jurisdiction to enforce such an emission standard or limitation or order. *Id.*

"Emission standard or limitation" is defined as: "(1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard. . . or (4) any other standard, limitation or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the Administrator, or any permit term or condition, and any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604 (f).

4

**PADEP Approves Wellington's Plan**

In July 2004, defendant Wellington submitted a plan approval application to the

Commonwealth of Pennsylvania Department of Environmental Protection ("PADEP"), seeking to

construct a power plant called the Greene Energy Resource Recovery Facility in Nemacolin,

Greene County, Pennsylvania (the "Power Plant").

The Power Plant is designed to burn a mixture of newly mined coal and reclaimed

abandoned bituminous waste coal, to generate 525 megawatts of electricity. This waste coal is

known as garbage of bituminous, or "gob" coal. Pollutants resulting from bituminous coal

combustion are regulated by the federal CAA.

On June 21, 2005, PADEP issued a permit to Wellington (the "Plan Approval" or the

"Permit")) authorizing Wellington to construct the Power Plant.

The Plan Approval provided that the authorization to construct expired if Wellington did

not commence construction within 18 months, or on or before December 21, 2006. On December

14, 2006, PADEP inspected the site "to evaluate and document physical construction activities that

have taken place at the site." (PADEP letter dated 12/20/06, Def.'s Ex. D). PADEP concluded

that the "physical site work meets the criteria for commencement of construction as that term is

used in the Plan Approval and 25 Pa. Code Section 127.13(b). Consequently, the Department has

determined that Wellington has commenced construction and has satisfied 25 pa. [sic] Code

127.13(b) and Condition 3, paragraph (d) or the Plan Approval." *Id.*

**Challenges to the Permit**

During the approval process, all of the plaintiffs had an opportunity to submit comments to

PADEP, and three either submitted comments or participated in state administrative and judicial

appeals of the Plan Approval. Philip Coleman, then-president of the Pennsylvania Chapter of the

Sierra Club, the NPCA, and GASP appealed the DEP's approval of Wellington's plan to construct

the Power Plant to the Environmental Hearing Board ("EHB"). After a four-week *de novo*

hearing, the EHB dismissed the appeal. *Dennis Groce, et al., v. Dep't of Envtl. Prot.*, EHB Docket

5

No. 2005-246 R, 2006 WL 3485200 (Pa. Env. Hrg. Bd. Nov. 22, 2006 (unpublished)).

The NPCA and GASP then appealed the EHB's approval to the Commonwealth Court of Pennsylvania, where the EHB's decision approving the Plan was affirmed. *Groce, et al. v. Dep't of Envtl. Prot. and Wellington Development*, 921 A.2d 567 (Pa. Commw. 2007). In addition to affirming the admissibility of certain evidence, the Commonwealth Court held that the mitigation measures in the Plan Approval adequately protected visibility at the Shenandoah National Park in Virginia from impacts resulting solely from the Power Plant; the Power Plant would not cause or contribute to an increment violation at Shenandoah; the DEP provided adequate public notice and opportunity for public comment; and that the NOx emission limit in the Permit met standards required by state and federal law. *Id.* at 573.

Appellant Groce petitioned the Supreme Court of Pennsylvania for leave to appeal the Commonwealth Court's decision, but that petition was denied on January 25, 2008. (Def.'s Ex. C).

PADEP issued a modification to the Plan Approval on February 8, 2008 ( (2008 Modification"; Def.'s Ex. F). Notice of the 2008 Modification was sent to NPCA and GASP, and the required public notice was published in the Pennsylvania Bulletin on February 23. (Def.'s Ex. G). Plaintiffs did not file an appeal with the EHB.

Plaintiffs then filed this complaint as a citizen suit, alleging that Wellington is proceeding without valid permits. Count I alleges that Wellington lacks a valid PSD permit because it did not commence construction within 18 months of receiving Plan Approval. Count II alleges that Wellington does not have a valid NSR permit for construction, in violation of the NSR provisions of the CAA, because it did not commence construction within 18 months. Count III alleges that by failing to commence a continuous program of actual on-site construction, to be completed within a reasonable time, or by failing to meet any of the milestone dates in the construction schedule it filed with PADEP on April 24, 2006, Wellington has violated Condition 3(d)(1) of its Plan Approval and the PSD and NSR provisions of the Pennsylvania SIP.

6

The complaint seeks declaratory and injunctive relief, civil penalties, costs and fees.

On February 27, 2008, after this action was filed, Plaintiffs submitted a petition to PADEP, asking that the Plan Approval be revoked because PADEP has not determined the maximum available control technology for limiting the Power Plant's emissions of hazardous air pollutants. (Def.'s Ex. I). That petition apparently remains pending.

On April 25, 2008 we granted Defendant's motion for leave to submit a supplemental exhibit to its brief in support of dismissal. (Doc. 30). That exhibit is Defendant's recent request to PADEP to modify the Plan Approval, which currently provides that construction must be completed within five years after it has been commenced. That Approval expires on July 1, 2008. Defendant seeks to have the Plan Approval modified so that the Permit expires on November 30, 2011. Plaintiffs have filed a surreply concerning this exhibit. (Doc. 32). This, too, is apparently pending before PADEP.

## Analysis

Defendant argues that we must dismiss the complaint under Rule 12 (b) (1) for lack of subject matter jurisdiction, or, in the alternative, under the *Burford* or *Rooker-Feldman* abstention doctrines. We turn first to the threshold question of whether we have jurisdiction to hear Plaintiffs' claims. We have granted all requests to submit additional briefs in this case, and are confident that the question of jurisdiction has been fully argued by both parties.

### A. We lack subject matter jurisdiction over Counts I and II

Federal district courts are obligated to exercise the jurisdiction Congress has given us. "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . ." *Willcox v. Consolidated Gas Co.*, 212 U.S. 19, 40 (1909). "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264 (1821).

Plaintiff's claims asserted in Counts I and II are brought under Section 7604 (a) (3) of the CAA, which authorizes a citizen suit in federal district court to enforce the statute as follows:

7

(1) against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, . . .

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

42 U.S.C. § 7604 (a) (1), (3).

Count I alleges that Defendant does not have a valid PSD permit to construct the Power Plant because it did not commence construction within 18 months. (Compl. at ¶ 39, 40). For the same reason, Count II alleges that Wellington does not have a valid NSR permit. (Compl. at ¶¶ 43, 44). On its face, the complaint asserts claims that appear to be within the ambit of the citizen suit provision of the CAA.

However, because Wellington has brought a factual challenge to our subject matter jurisdiction, we must consider and weigh the other evidence of record as it pertains to jurisdictional facts. That evidence convinces us that we lack jurisdiction over Counts I and II.

The parties do not dispute that a valid permit was issued for the Power Plant. Indeed, following the Plan Approval, Plaintiffs challenged, *inter alia*, the emissions limitations of that permit. Plaintiffs explain that they are not challenging the Permit here, but instead have filed suit to enforce the expiration and construction conditions of that permit. Plaintiffs' position is that there is no valid permit because Defendant did not commence construction before December 21, 2006.

Wellington argues that Counts I and II must be dismissed because they are nothing more than a collateral attack on PADEP's conclusion that construction was timely commenced, and we agree. After considering the evidence filed by both parties, we agree with the Defendant that Counts I and II are a collateral attack on PADEP's determination that the construction was timely

8

commenced. Wellington has produced a letter from PADEP, confirming that construction was commenced within the timeframe required by the Plan Approval. Moreover, PADEP has modified the Permit as recently as February 2008, which indicates that the agency regards the Permit as a valid permit. To resolve Counts I and II in Plaintiff's favor would require us to question the agency's own conclusions, made after a site inspection, that work on the Power Plant had timely commenced.

We will dismiss Counts I and II, without prejudice, for lack of subject matter jurisdiction under Rule 12(b)(1).

### B. We lack subject matter jurisdiction over Count III

Count III alleges that Wellington has violated condition 3(d)(1) of its Plan approval and the PSD and NSR provisions of the Pennsylvania SIP, because it has not (a) commenced a continuous program of actual on-site construction of the Power Plant, to be completed within a reasonable time; or (b) has not met any of the milestone dates in the detailed construction schedule filed with PADEP on April 24, 2006, as required by 3(d)(1) of the Plan Approval. (Compl. at ¶ 47; Def.'s Ex. 2, Condition 3(d)(1)).

The claims asserted in Count III are also brought under Section 7604 (a) (1) of the CAA, which authorizes a citizen suit in federal district court to enforce the statute. 42 U.S.C. § 7604(a)(1).

Plaintiffs explains that this count seeks to enforce the self-executing expiration date in the Permit as well as the Permit conditions requiring Wellington to commence a continuous program of on-site construction, or meet the milestone dates in the Power Plant construction schedule.

Wellington argues that we must dismiss Count III as a collateral attack on the Permit. To the extent that Plaintiffs again challenge the fact that work on the Power Plant has been timely commenced, we have concluded that this is a collateral attack on PADER's decision over which we have no jurisdiction.

Wellington also argues Count III must be dismissed because it asserts violations of Plan

9

conditions that cannot be violated. Defendant contends that the relevant provisions of the Plan Approval and the SIP provide that the Plan Approval shall become invalid if construction is not commenced within 60 days, but that aside from that they do not require that certain actions occur. (Def.'s Br. at 23).

In its entirety, Condition 3(d) states the following:

> This approval to construct shall become invalid if: (1) construction is not commenced . . . within 18 months after the date of this approval; or, (2) if construction is discontinued for a period of 18 months or more; or, (3) construction is not completed within five years. The Owner/Operator shall submit to the department a detailed construction schedule for the entire facility within 60 days of issuance of the Plan Approval.

Plan Approval, Def.'s Ex. 2 at Condition 3(d).

We have already concluded that any allegation that Wellington has violated Condition 3(d)(1) is a collateral attack on a state permitting decision over which we have no subject matter jurisdiction. On that basis we will also dismiss Count III of the complaint. Moreover, despite the allegations made in Count III, Condition 3(d)(1) does not speak to discontinuing construction or completing it within 5 years. Those are other provisions of Condition 3(d), and violations of those provisions are not alleged in Count III of Plaintiffs' complaint.

Furthermore, were we to reach all provisions of Condition 3(d), we agree with the Defendant that neither of the other provisions support a finding that we have jurisdiction over Count III.

Under condition 3(d)(2), the Plan Approval shall become invalid if construction is discontinued for a period of 18 months or more. Plaintiffs point to three construction inspection reports, dated March 6, 2007 (Pl. Ex. 5), October 5, 2007 (Pl. Ex. 6), and January 15, 2008 (Pl. Ex. 7) to support its argument that no continuous construction has taken place since December 2006. Plaintiffs also submit aerial photographs of the site, showing that the site has been cleared of trees but that the only visible construction is a concrete foundation pad that was in place in December 2006. Plaintiffs argue that there is at least a genuine issue of material fact as to whether

10

Wellington has commenced "a continuous program of actual on-site construction" of the Power Plant. (Pl. Br. Doc. 18 at 26).

Plaintiffs have not met their burden of proof on this question. Whether there is a genuine issue of material fact for trial goes to the merits of the complaint, and is not the standard we must apply when determining our subject matter jurisdiction. Under Condition 3(d)(2), the Permit shall become invalid if more than eighteen months passes without construction. Eighteen months has not yet passed since PADER concluded that construction had been commenced, so it is premature to argue that construction has been discontinued in violation of the CAA and the Plan Approval.

Condition 3(d)(3) provides that the Permit shall expire if construction is not completed within five years. This condition cannot have been violated because five years have not yet passed since the Permit was issued. This condition is the subject of Wellington's recent petition asking PADER to modify the Plan Approval and extend this expiration date, which is pending before the agency.

Finally, Plaintiffs allege a violation of the requirement to submit a detailed construction schedule to PADER within 60 days of the Plan Approval. However, it is undisputed that this schedule was properly submitted on April 24, 2006. (Compl. at ¶ 47). The Plan Approval does not impose a requirement to meet these construction dates, nor impose a penalty if any are not met. Nothing more is required of Wellington to fulfill this part of Condition 3.

Count III is a collateral attack on the Permit and the Plan Approval granted by PADER and upheld by the EHB and the Pennsylvania courts, and we will dismiss it for lack of subject matter jurisdiction.

### Conclusion

Since we lack jurisdiction, we do not reach Defendant's alternative arguments regarding notice and the federal abstention doctrines. For the reasons set forth above, we find that we lack subject matter jurisdiction over Plaintiffs' claims, and we will grant Defendant's motion to dismiss the complaint. As this is not a final decision on the merits, we will dismiss without prejudice. An

appropriate Order follows.

May 13, 2008
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior United States District Judge

12